May I please declare Charles Scarborough for the United States as amicus curiae in support of appellant. This case involves allegations that the University of Phoenix knowingly made false promises to comply with the statutory prerequisite to obtaining federal student loan and grant funds, that is the ban on paying incentive compensation to recruiters. As the Seventh Circuit recently held in an identical case, U.S. ex rel. Maine v. Oakland City University, the false statements that are made at Phase 1 in a multi-step process for obtaining federal funds are actionable if they cause a Phase 2 request for payment by the government, even if that request does not itself contain any false statements on the case. So your basic pitch is follow what the Seventh Circuit did in the Maine v. Oakland case. Well, it's certainly in an identical case. I mean, even if Maine didn't exist, our basic pitch would be follow the plain language of 3729A2. But that's how you'd like us to construe it, essentially the same way that they did. Absolutely, Your Honor. I think the cases are on all fours, and that would be sort of the easiest way to do it. I mean, 3729A2 imposes liability where a person uses a false statement to get a claim approved. And that's precisely what happened here, sort of at the outset. In order to even become eligible to receive any Title IV funds, the university made representations that it would comply with the incentive compensation ban, knowing at the time that it was, in fact, not going to comply. These are the allegations. Of course, that remains all to be proved still. The district court said because the threshold statement was not a certification, sort of a magic language rule, that it was not actionable, even though it was, in fact, clearly a prerequisite to obtaining the government benefit. And that is just clearly wrong. The False Claims Act itself doesn't speak in terms of certifications or require any sort of magic language of that sort. It requires a false statement being used to get a claim paid to which you are not entitled. And that's precisely what's alleged here. The Hopper case, in addition in this Court, recognizes this sort of theory of liability, that basically what matters in a False Claims Act case is that the requirement be a prerequisite to obtaining a government benefit. There's absolutely no dispute that compliance with the incentive compensation ban, along with a lot of other requirements, is a statutory prerequisite to getting into the program and becoming eligible to receive Title IV funds. And in the government's view, it doesn't matter, and there really is no distinction between conditions of participation and conditions of payment, because ultimately you can't get the money at all unless you make this threshold representation, which is alleged in this case to be false and to have been knowingly false. It's actionable, as I said, under 3729A2, the plain language there, and also under a promissory fraud theory that the plaintiff has clearly pled that the promise of compliance with the incentive compensation ban was false when made. That's at Record Act 50. There's clearly an allegation there. The district court didn't like that allegation, and the defendants say, well, no, it's not really false when made, but these are matters of proof. They're not matters for a motion to dismiss. And that's the way the case has been disposed of. I should note that the case is important to the government, because as the Seventh Circuit recognized, there are lots and lots of programs that require sort of an initial statement or series of statements about eligibility. Eligibility, for instance, to obtain benefits under a small business administration loan, where you might have to prove that you are a minority-owned business, that are made at the outset. Then you're in the program, and then claims are being made to the government for money in various forms, vouchers that don't have all those same representations at that point. But those claims are still false if conditions have changed. If, for instance, you are no longer a small business minority. But how do we keep from making a regulatory violation into a false claim in every single case? Sure. It's not because it requires knowledge. The knowledge component satisfies most of those situations that the Seventh Circuit recognized. What do you mean knowledge? The False Claims Act, as a separate component, requires knowledge of the falsity. It's a lie. It's not a mistake. It's not that you tripped up on some obscure provision, you know, in compiling your taxes. It's a knowing violation that is material or relevant to the government's decision to pay or relevant to the government's decision to allow you into the program. And there's no question that this incentive compensation ban was quite relevant. This is not an obscure sort of thing buried somewhere. Even though the defendants would have you believe otherwise. In 1992, Congress looked at the problem of incentive compensation being paid to recruiters and specifically added amendments to deal with this problem, basically finding that because if recruiters, you know, had incentives, salary incentives to go out and get students, they would get students who are unqualified. And that would ultimately result in higher default rates by students, and that would ultimately result in the government picking up the tab more in cases like this. So this is not something that's, you know, an obscure thing that's just sort of, you know, hidden somewhere. The one final thing I would point out is that the legislation. But that's also a factual issue for trial. Absolutely, Your Honor. Just because you say they know it doesn't mean they actually did know it. Absolutely, Your Honor. That all remains to be proved, and that just sort of emphasizes the very, very preliminary stage at which this case was sort of cut off at the knees here. And I'm just trying to suggest that, you know, there's probably a strong case for showing materiality here. But maybe I'm overstepping here, and that's starting to argue, you know, what the relators would have to prove in the future. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Good morning. May it please the Court. My name is Nancy Kropp, and it is my honor and privilege to represent the whistleblower relators in this case, Mary Hendow and Julie Albertson, who are here in court with us today, along with my co-counsel, Daniel Robert Bartley. If I may jump ahead, I wanted to respond to your question, Your Honor, on how do we stop every regulatory violation coming under the False Claims Act. And, Your Honor, my response to that would be that Hopper sets forth the test very clearly that there must be a causal connection. The whole focus of the inquiry is, is there a causal connection between the false statement or the false representation of compliance and the ability to access the funds. Now, in this case, that causal connection is real clear because it's in the funding statute. The Higher Education Act itself states that an institution must comply in order to be eligible to request funds. So when you've got it stuck right there in the funding statute, there is your clear causal connection. It's not something buried. Also, as my co-counsel, I'm sorry, not my co-counsel, the Department of Justice point out, there will have to be proof that it was knowing an intentional violation and that it was known that this violation was necessary to get access to the funds. And that's why, if you look in our complaint, you'll see we are alleging that it is a knowing and intentional lie and that you've got the University of Phoenix is actually boasting and bragging about their deceptions. We've alleged that they're accompanying meetings boasting about how they're flying under the covers. There will be much, much more evidence at due step trial when we get reversed and we can put forth all the clear knowledge that they do know that this is a prerequisite to request the funds. I'd also like to direct your attention to, it is in our briefs, I wanted to highlight it, that historically statements falsely claim eligibility have been held to be a false claim. And I would quote from the legislative history directly where it says, claims may be false where the claimant is ineligible to participate in the program. Where a claimant is ineligible to participate in the program. That is directly this case. We've got the University of Phoenix requesting funds when it's ineligible to participate because it is paying these incentive compensation violations. Hopper, this court recognized that same basis for liability saying, false statements which create eligibility that otherwise would not exist state a false claim. Every request for funds after that is a false claim. And that's where the district court got it wrong. The district court said, well, a false statement has to be in the request for funds. That would then disregard all this authority that precursor false statements create eligibility then taint the subsequent claims. I would also like to just quickly point out that the district court also erroneously was focusing, again, on what was the name of the false statement. Was it called a certification? And I would direct you and request that you just go back to the basis. The starting point of interpretation is the False Claims Act statute. Section A-2 simply requires a false statement that then induces the government to provide the benefit. You will not find authority that that false statement must be called a certification. The Hopper, again, was looking at a similar case, said the test is does the false statement induce the payment. It was not looking for whether that false statement was called a certification. And to take it even further, if you insisted on calling that false statement a certification, you would wipe out the implied false certification theory of liability, which definitely does not have a certification. Those are simply cases where someone goes to the government as an abtec and says, sure, we'll comply with your small business program, and then requests the money when they're not in compliance. And they do it knowingly. That's your implied case. But all they did is they signed a statement of cooperation. They didn't sign any certifications. You've got the Shaw case where someone goes, sure, let us take pictures for the Air Force. We will comply with your environmental laws. And they had no intention to do that. They did not do that. They requested the funds. They were not in compliance. Again, they were implying compliance every time they requested the funds. But they're simply executing documents containing these false statements that are not labeled certifications. Unless you had questions for me, Your Honor. I have a question, Ms. Crabb. Yes. You have three theories, express, implied, and then promissory fraud. That is correct, Your Honor. Does it matter? I don't know enough about how this would play out if it goes back, but does it matter which theory you would win on if we agree with you or? If we go back to district court, Your Honor, no, I believe we can prevail under these are alternative theories that we would like to present them all to the jury, give them a chance, decide, you know, which do you think happened here? There is one distinction, Your Honor, in that I think under the express statement theory and on the promissory fraud theory, you would need to prove that the statements right up front were false when made, which we intend to allege. But it's my contention under the implied theory, for instance, there are no allegations that the statements when made are false. In the ABTEC case, when they signed the statement of cooperation saying we're going to only work with small businesses, what they actually alleged was that then they did not do so and requested the funds when they were not in compliance. They never alleged that that initial statement was false. So it is interesting to note that it would give the jury two avenues to impose liability. One is whether they, when they made the statements, did they intend to deceive the government at that time or was it subsequently when they knew they were not in compliance and asking for the funds, can liability be imposed that way under the implied false certification theory? Thank you. So it's a little difference. Great. Thank you very much. Thank you very much, Your Honor. Good morning. Good morning, Your Honors. My name is Tim Hatch with my colleague Brian Arnold. We represent the Appalese University of Phoenix. In this appeal, Relators Council and the Department of Justice have presented you with a smorgasbord of theories to get to the same result, namely to make a routine regulatory violation actionable as fraud under the False Claims Act. What's wrong with the analysis that the Seventh Circuit used in Maine under Subsection 2 of the statute, which requires only a false statement that then causes money to be paid when it isn't owed? Several things, Your Honor. First, virtually all of the courts that have considered this issue, whether it's false certification, implied certification, or promissory fraud, have been very clear that the promise or certification that underlies the action must be a condition of payment or a prerequisite to payment. That's one of the ways that courts have distinguished regulatory or statutory violations that can and should be actionable under the False Claims Act from those that are not. But isn't that the precise allegation here that if these false statements had not been made, assuming now that they were false, then the money would not have been paid? That's the allegation. It would not have been owed. That's the allegation, Your Honor. But the problem with that is that it is directly contrary to this Court's decision in Hopper, which is one of the leading cases across the country on both false certification as well as promissory fraud. And Hopper makes several points very clear. One, it makes very clear that not all regulatory violations should be actionable as fraud. Second, it makes very clear that with regard to promissory fraud, the theory now being advanced vigorously by the relators and by DOJ in light of the main decision, it says that promissory fraud cases should be exceedingly rare. And the exceedingly rare is because, in order to advance that theory, there has to be a very close nexus to payment. Now, in this case, the problem How much closer could it be if the statements had been – if the statements were false, money would not have been paid? Well, I'd like to respond to that on two levels. First, the participation agreement, the program participation agreement, the PPA that's at issue here, is a standard form boilerplate agreement that all educational institutions must enter into. So? It includes in its four corners or through incorporation hundreds, if not thousands, of statutory, regulatory, and other requirements imposed upon educational institutions in order to be eligible for Title IV funding. Thus, application of any of the theories advanced by the relators, by the Department of Justice, would mean that the violation of any of those statutory or regulatory provisions relating to any aspect of the Title IV programs would give rise to FCA liability. Well, it could if it were knowing. And isn't that really the key? They have to prove that it was intentional or not intentional, but that you were aware of it, you did it on purpose, and you did it so you'd get the money. That's the key. I mean, isn't that where the difficulty for the government arises in, is in actually proving it? It certainly would be, Your Honor, if this would proceed to discovery and to summary judgment. That would be a fact issue, of course. But courts such as this Court in Hopper and circuit courts throughout the country have set at a preliminary stage, recognizing that relators and, to some extent, the Department of Justice have been bringing more and more regulatory, statutory breach actions as false claims, that that's not appropriate. And there has to be a threshold at the outset. And that threshold is it has to be a condition of payment. In this case, Your Honor, I'd like to move on. What has to be a condition of payment? I don't understand. What do you – what kind of statement would work for you under Subsection  What would have had to happen here that didn't happen as alleged? I'm not asking you to admit the truth of any of the allegations. But just as allegations, what more or different would have had to be said to fulfill a potential claim under 3729A2? Well, if you look at cases in which the courts have found or have discussed the false certification theory and what is a sufficient condition of payment, it's – Certification is not a word in the statute. It is not, Your Honor. What you have to do is knowingly make, use, or cause to be made or used a false statement. I'm leaving out some words in between. A false statement to get a false or fraudulent claim paid or approved. You're right, Your Honor. It is not a word. We're not taking the position that it has to be a certification. I'm – I interpret the district court's decision when he was using the term certification. He was referring to the two tests that are set forth in the offer. So what – in this context where there is a claim that incentive bonuses are paid improperly, what would have to be alleged to get past the pleading stage under subsection A2? Well, I think as there were in a number of the cases in which false certification clauses of action have been permitted to go forward, there has to be some sort of either regulatory, statutory, or other provision that makes the compliance much more explicit and specifically related to the funding decision. For example, in the participation agreement, the very document we're talking about here, as I said again, there are hundreds, if not thousands of statutory and regulatory requirements set forth in that agreement. There's one, for example, sub – sub 8, that requires that the educational institution will not provide any statement to any student or certification to any lender under the Federal Stafford Loan Program that qualifies the student for a loan or loans in excess of the amount that the student is eligible to borrow. Now, that, I would acknowledge, if it felt fit the other requirements for false certification, would be something that would and could and should be actionable under false certification theory, because there is an action that the institution is taking that has a direct impact on the funds that would be dispersed by the government. Now, also in the PPA, among the hundreds, if not thousands of other provisions, are requirements that the institutions make efforts to distribute mail voter registration, that they have standards of administrative capability, that they provide annual security reports to students, that they report on intercollegiate athletic competitions if their schools offer athletic programs. All of these requirements, under any of the theories being advanced here, would be actionable as fraud. There are an array of administrative actions and remedies that are available to deal with all of those, and that's how they should be dealt with, not as FCA actions. I would go on, Your Honor, to point out that in this case, there are two significant developments that occurred after the district court ruled, both of which have been put before this Court in this appeal by the relators and by the Department of Justice. First, as a matter of policy, the Deputy Secretary of Education prepared a memorandum instructing the Department on how to deal with issues relating to violation of incentive compensation. It's the Hansen memo that's before the Court. And the Deputy Secretary of Education said the preferable approach is to view a violation of the incentive compensation prohibition as not resulting in monetary loss to the Department. Improper recruiting does not render a recruited student ineligible to receive student aid funds for attendance at the institution on whose behalf the recruiting is conducted. So as a matter of policy, the Department of Education ---- I'm not clear what the relevance of that is. So that's their policy. So what? Well, I think that goes, Your Honor, directly to the point of does the Department of Education view this as something that is sufficiently connected or tied to the funding decision that it should be actionable? The Department of Justice thinks it is. So what do we do about that? Well, I think that in this case, I would contend the Department of Education, who has responsibility for administering and enforcing the Higher Education Act, would ---- would, you know, have the say in that. The second ---- it goes even further than that. That's a matter of policy. In this case, the issues that are raised by this lawsuit and that were raised in the program review report that was conducted and presented by the Department of Education in that document, and this, again, was put before this Court by relators, and it's a ---- it was in a request to take judicial notice, which was granted by the Court. The settlement agreement between the Department of Education and the University of Phoenix makes very clear that this resolves all issues relating to the incentive comp issue, and the Department expressly states that it will not impose on UOP any penalty, repayment liability, administrative fine, or other sanctions. Isn't that a matter for defense at trial? Well, it ---- But it doesn't mean that the complaint is dismissed. I agree with you. Normally, it would be. But here in this case, on a motion to dismiss, this is something that happened, again, after the district court ruled, but has been put before the Court here. The Department of Education has said, we have considered, we have investigated, we have reported on these issues, and we are not going to do anything with regard to your eligibility to participate in Title IV programs. What bearing does that have on the relator's claim, their individual? Do they ---- are they parties to the settlement agreement as well, I don't recall? They are not, Your Honor. So, you know, again, we would ---- we would contend that the problem with any of the theories being advanced is that there's just no limit ---- no limiting principle, no principle limiting principle, and that any and all statutory or regulatory violations would be actionable. I'd like to address the Department of Justice's theory about all conditions of eligibility should be, in essence, conditions of payment, because clearly, the incentive comp provision in the PPA is a condition of eligibility. We will acknowledge that. But so are, again, all of the hundreds, if not thousands, of other provisions. We believe that this issue was addressed and rejected by this Court in the Hopper case. The Hopper case, as you may recall, involved local plans that school districts had to submit in connection with IDEA funding. And I think we're all in agreement that the local plans, that this requirement, were not conditions of payment. The Court so holds. We believe that. And I believe that the Relators and DOJ do as well. But what's important there is that the local plans very much were a condition of eligibility. 20 U.S.C. 1413 states that a local education agency is eligible for assistance under this part for a fiscal year if such agency submits a plan that provides assurances of the state educational agency that the local education agency meets each of the following conditions. That's exactly what we have here, that the statute required that participants in IDEA program to be eligible for participation had to submit a plan. The plan was submitted. The QUTAM Relators attempted to argue that violations of that plan, which contained a very comparable assurance that the participant will comply with all of the various regulatory requirements, attempted to bring that as a false claims cause of action, and the Ninth Circuit rejected that. Mr. Hatch, did you acknowledge that promissory fraud is a viable theory in a false claim case? Absolutely, Your Honor. They say that when you entered into this agreement, your folks entered into this agreement, they did so, they basically tricked them. They had no intention of complying with the incentive ban. Why doesn't that state a claim? Well, I would first respond that even if the facts are as they established, and obviously for our purposes here today we assume they're true, the Department of Education, once they were fully informed of the facts, have determined that that's not a basis for withdrawing eligibility. You're going beyond the complaint. But I'm not going beyond the record that's before this Court. Well, I mean, you can file anything with the district court. The district judge is required to look at the four corners of the complaint. The reason, Your Honor, is that, again, I go back to Hopper. Hopper is, we believe, the proper authority that this Court should follow in connection with promissory fraud, not the main case. In Hopper, what Hopper says is that promissory fraud under the FCA, which is very critical, because not, you know, every action of promissory fraud should be actionable, but under Hopper, the Ninth Circuit says that these cases should be exceedingly rare. And one of the primary reasons for that. So is that a basis for? This may be a real one. How do you know at the complaint stage whether it's rare or not rare? I mean, to say something exists, but we may not find it very often, I don't understand how that helps you. Well, because in Hopper, Hopper involved those local plans that we just talked about, local plans which we contend are really indistinguishable from the PPAs. Hopper examined those and found that violations of those local plans, which were conditions of eligibility to participate in that program, were not sufficient upon which to base promissory fraud cause of action under the False Claims Act, that there had to be a – that they couldn't just be a condition of eligibility, they had to be a condition of payment. Well, what difference does it make to our analysis that Hopper was at the summary judgment stage where there was a factual record, and so what the Court was commenting on was the state of what had actually been proved rather than what is permissible to be proved in the abstract. We're sort of one stage back. Yes, but I believe on the issues that we're addressing here, especially with regard to the elements and the scope of a false certification cause of action or a promissory fraud cause of action under the False Claims Act, there really weren't factual questions such as scienter or intent or knowledge. Those issues really weren't relevant to what the Court was ruling with regard to those causes of action. I think that the Fifth Circuit decision in Southland, and this is actually from the concurring opinion of an embanked decision that unanimously, you know, upheld the dismissal of the False Claims Act, explains why it's important that the – that the promise or the certification has to be so closely connected to the funding decision, and how that many regulatory and statutory violations don't rise to that level. Judge Edith Jones stated in a concurrence that was joined by four other judges that were a court to hold that any kind of government certification required in connection with Federal government payment and reimbursement vouchers is material as a matter of law. The government would erase the crucial distinction between punitive FCA liability and ordinary breaches of contract by the simple expedient of requiring broad boilerplate certifications. And that's exactly what we have here. The PPA is a broad boilerplate certification, not unlike the participation agreement that all health care, or at least hospital health care providers have to participate in in order to get certification to dismiss stages, False Claims Act causes of actions with regard to provision of health care services in compliance with the Medicare regs. You know, courts have routinely gone through that process. The Relators Council talked to you about two circuit courts, the Abtec case in the Federal Circuit and the Shaw case in the Tenth Circuit, in which courts have been more receptive to some of the theories that have been advanced by Relators and DOJ. I would urge and suggest that the Court not only obviously focus on Hopper, which we think is indistinguishable from our case and dictates that the Court come out otherwise, but also the First, Second, Fourth, Fifth, Seventh, and D.C. circuits have rendered opinions with regard to false certification and are all very similar to Hopper, requiring a much greater standard in order to be able to plead and withstand a motion to dismiss in connection with the false certification or a fraud in the inducement case. Do you have anything else? Mr. Hatch, thank you very much. Mr. Scriber, are you going to close for your side? Yes, I am. I don't want to belabor any points here, but the theme that you hear repeatedly is one that the Court addressed in the Oliver case, U.S. Extra Oliver v. Parson, that the sky is falling here, that basically any regulatory noncompliance is going to be converted into a False Claims Act case. The Court made very clear in that case there is a distinction between the threshold requirement of when a claim is a false claim at a motion-to-dismiss stage and then the requirements about knowledge. And the Court seems to recognize that. I don't want to pound on that too much, but that's a matter for proof at a later stage, that the person had knowledge that they were submitting things that were, in fact, false. And that's an important limitation on this. There's a specter that the world is going to fall apart at the seams here. Any regulatory violation is going to be converted into a False Claims Act case is really just sort of a sky is falling assertion. And the Court addressed that in Oliver. With respect to the settlement issue, counsel raised that and seems to suggest that somehow this precludes a False Claims Act liability case in the settlement agreement, which is before the Court on judicial notice. It expressly preserves the False Claims Act action to go forward. So, I mean, there's a lot of reasons why the Department and the defendant might choose to enter into a settlement agreement, and it does not have any bearing on, you know, whether a False Claims Act action may or may not. Well, it could, even if the parties – it could if it renders the case moot. In other words, if there's nothing left at stake. I don't see how it would render the case moot, Your Honor. I mean, they – I mean, they don't have a claim. They bring the claim on behalf of the government. I understand, Your Honor, but the settlement is expressly a non-admission of liability here. I mean, this is – they don't admit to any – doing anything wrong, any falsity or anything. It doesn't settle the relator's claim. That's quite clear. Not really before us, anyway. And they certainly haven't made any argument along those grounds. But the point is that there's a – there's a degree to which the defendant is trying to use the existence of the alternate sort of administrative scheme as a way of saying, well, you don't need the False Claims Act scheme. In fact, the two dovetail. In fact, the False Claims Act scheme is precisely why the Department of Education is even on notice about this case, because relators have a financial incentive to come forward. It's – it takes guts to be a whistleblower. And Congress has made a call that you get to share in the recovery. And it's because of the False Claims Act recovery, arguably, that you have the whistleblower coming forward that the Department of Education was even alerted to these violations of the incentive compensation ban. With regard to the Hansen Memorandum, which we submitted at the back of our brief, in no way does the Hansen Memorandum trump what Congress has established as prerequisites to participating in Title IV funding programs. The Hansen Memorandum, as the Seventh Circuit recognized, on its face doesn't say anything about it not being a prerequisite to payment or, you know, eligibility. It doesn't make any sort of distinction like that. It just says that as a general matter, we think that these probably don't result in loss to the government. Well, the False Claims Act, as this Court has recognized in Haygood and other cases, doesn't require loss to the government. It requires false claims. And the Seventh Circuit recognized in its decision in Maine that it's precisely in cases where loss may be difficult to quantify, and loss may be difficult to quantify in this case, where penalties may be appropriate in the False Claims Act case. So the Hansen Memorandum, just at a threshold level, certainly on a motion to dismiss, can't trump Congress's considered judgment in describing the incentive compensation ban, among other things, as a prerequisite to receiving benefits here. I don't want to take up too much more time, but I do really want to emphasize that this is important to the government beyond this case. And, Your Honor, Judge Silverman, you asked, does it matter which theory that the relators prevail on. I think it doesn't matter so much for this case, because this case has so many different theories on which they could win. It is sort of an extraordinary case where they've alleged the promise is false when made, but it does matter for the government's institutional interest in implied certification cases that that theory, at least not in some way, be precluded. We think Hopper clearly allows that theory to continue on when a claim is a prerequisite to receiving a government benefit. It makes no distinction between conditions of payment or conditions of participation. We just want to make sure that the Court doesn't do anything that disturbs what is already, in our view, a very good law in this circuit on issues like that in writing, you know, in a narrow way in this case. But we think that following the Court's decision in Maine would be perfectly adequate. Thank you very much, Jeff. Thank you, Your Honor. Ms. Carver, Ms. Cropp, thank you. Mr. Hatch, thank you. The case does start. You just submitted.
judges: Hall, Silverman, Graber